**In the Matter of PLEASANT VALLEY, INC., a Nevada Corporation, Debtor.**

**William PAGNI, Mary Pagni, Elio Pagni, Albert Pagni, Roy Pagni, June Pagni, Vanna Pagni, Raymond Pagni, Robin Pagni, Plaintiffs,**

**v.**

**PLEASANT VALLEY, INC., Defendant.**

Bankruptcy No. 79–00539.
Adv. No. 80–0016.

United States Bankruptcy Court,
D. Nevada.

May 19, 1980.

Bruce D. Roberts, Cooke, Roberts & Reese, Reno, Nev., for plaintiffs.

Stephen R. Harris, Reno, Nev., for defendant.

## OPINION AND DECISION

BERT M. GOLDWATER, Bankruptcy Judge:

This is an action to lift the automatic stay by the sellers of the Pagni ranch, using both grounds of Section 362(d).[1]

The Pagni ranch was appraised on March 5, 1977 for the sum of $1,053,000. On June 29, 1978, it was purchased by the debtor for $5,000,000, with $75,000 down, $925,000 to be paid in six months and the balance of $4,000,000 over a period of ten years with interest at 9% per annum. When the $925,000 payment became due in November, 1978, the Pagni family granted a five–month extension with interest to be raised on the $925,000 to 12% per annum. Interest has been paid on the entire debt to June 15, 1979, but no payment of principal. As of May 15, 1980, there was due $431,750 in interest, which continues at $1,290 per day on the unpaid principal of $4,925,000.

The real property consists of several parcels south of Reno, Nevada, and near the north side of Washoe Hill outside Carson City. The principal parcel consists of 378 plus acres of farmland consisting of meadows and hills traversed by creeks most, but not all, of which can be developed for residential units. It is zoned for agricultural which permits one residence per acre. A second parcel is the old ranch living area consisting of 36 acres on which there were two old houses (one now destroyed by fire), with barns and sheds of little value. This latter parcel is relatively level and connected by roads to the highway running between Reno and Carson City (U.S. 395).

Another parcel is an 80–acre parcel not contiguous to the main ranch which is a mountainous wooded area completely undeveloped by any roads and without water rights. It is near other mountain home developments but not connected by roads or easy passage.

A fourth parcel consists of a commercial area along the highway of 3.79 acres on which a building (the former Club Jubilee) and three duplexes are located.

---

1. (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or:

(2) with respect to a stay of an act against property if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

A fifth parcel is on the east side of the highway. A former service station and an improved office building are situated on the property consisting of 1.86 acres zoned commercial.

Additionally 5 acres of the main property is zoned M–1, which is industrial and can be considered commercial. There are 10.29 acres commercial, approximately 405 main ranch residential and the 80–acre parcel.

Apart from the 80–acre parcel, there is adequate water rights by ditch decrees or well permits, totalling some 4,000–plus acre feet, of which the excess [2] depending on the need, could be transferred if a purchaser and diversion point is approved by State officials [3].

Since the purchase of the Pagni property, the debtor has acquired 120 acres contiguous to the main ranch called the Burfening ranch on which it owes approximately $395,000 in four deeds of trust. In addition to the principal and interest of the Pagni first deed of trust of $5,356,750, there are two other deeds of trust totalling principal and interest of approximately $460,000, making a total indebtedness against the Pagni property of $5,816,000.

The debtor has spent considerable money on engineering, planning and feasibility studies. Its first attempted plan called for a density of 1176 living units. This was reduced by the Planning Commission to 980 units with numerous recommendations including a water company, a sewer plant, and special highway access overpasses. It has now almost completed all engineering, geologic, topographic and other surveys to present a map to the Planning Commission for 467 units, using parts of both the Pagni and Burfening property. No overpass to Highway 395 would be required.

**2.** Two acre feet were transferred by one of the Pagni's to property of a third person after the sale to debtor.

**3.** A transfer of water rights from the main farm could be assigned to the 80–acre parcel subject to statutory requirements. See NRS 533 385.

Plaintiffs contend they are entitled to relief from the stay under Section 362(d)(1) because of lack of adequate protection of their interest and no reasonable likelihood that the debtor can be reorganized.

Under Section 362(d)(2) plaintiffs allege that debtor has no equity and the property is not necessary for a successful reorganization.

### I.

One element is common to both these grounds: whether equity exists in the property.

Plaintiffs' and defendant's experts divided the parcels differently but, in general, the parcels may be approached and analyzed as to the appraisals as follows:

PLAINTIFFS' APPRAISAL

| PARCEL | APPRAISAL | VALUE PER ACRE |
|---|---|---|
| 1. 378 Acres | $3,030,500.00 | $ 8,000.00 |
| 2. 36 acres (including residence and farm buildings) | 360,000.00 | 10,000.00 |
| 3. 80 acres (wooded parcel) | 240,000.00 | 3,000.00 |
| 4. 3.79 acres (commercial) | 113,700.00 | 30,000.00 |
| 5. 1.64 acres (Club Jubilee building, and three duplexes) | 302,000.00 | |
| 6. .80 acres with service station and bar[4] | 101,000.00 | |
| TOTAL | $4,147,200.00 | |

DEFENDANT'S APPRAISAL

| PARCEL | APPRAISAL | VALUE PER ACRE |
|---|---|---|
| 1. 415.5 acres main farm | $3,947,250.00 | $ 9,500.00 |
| 2. 80-acre wooded parcel | 848,000.00 | 10,600.00 |
| 3. 15.5 commercial acres[5] | 465,000.00 | 30,000.00 |

**4.** This is actually 1.8 acres which increases the appraisal.

**5.** This must be reduced to 10.29 acres, which is plaintiffs parcels 4 and 5 acreage plus 5 acres of M 1 (Industrial).

DEFENDANT'S APPRAISAL

| PARCEL | APPRAISAL | VALUE PER ACRE |
|---|---|---|
| 4. Club Jubilee building only; | 281,900.00 [6] | |
| 3 duplexes, buildings only; | 192,000.00 | |
| Office and service station; | 82,100.00 | |
| Residence on farm | 35,000.00 | |
| TOTAL | $5,851,250.00 | |

The defendant also presented testimony of further other items of value:

| 1. Acre feet of water, 4,191.23 | $3,143,500.00 |
|---|---|
| 2. Aggregate rock available for leasing | 600,000.00 |
| 3. Timber | 250,000.00 |
| 4. Miscellaneous capital improvements | 70,000.00 |

With the additional items above, debtor claimed a value of $9,914,750.00.

Plaintiffs' value of Parcel 1, $8,000 per acre, is less than a March, 1980 sale of comparable land known as the Callahan ranch. Defendant contends the Callahan price was negotiated in 1978 although recorded in 1980; that the Pagni ranch is a finer location being on U.S. 395; that Callahan ranch sold for $8,421 per acre, and that the Pagni ranch has over 2,500 lineal feet along the highway as potential commercial.

When plaintiffs' parcels 2 and 3 are added together, there is a total acreage of 414 acres including the farm residence for a total of $3,390,000, as against debtor's appraisal of 415.5 acres at $3,947,000.

As to the commercial land and improvements, plaintiffs' parcels 4, 5 and 6 add up to $516,700. Defendant's commercial land is $308,700, (adjusted as to acreage from 15.5 to 10.29), the Club Jubilee–$161,900, (adjusted for necessary improvement), the service station and warehouse–$82,100, the duplexes $192,000 and the residence of $35,000, making a total of $779,700.

Thus, on land value it appears the parties are $557,000 apart on the prime potential residential land; $7,600 apart on the per acre value of the 80–acre piece; and $263,000 apart on commercial land and improvements.

Removing the 80–acre piece from the controversy because of the great disparity

**6.** This must be reduced by $120,000 for improvements needed for value given.

in the appraisals, it appears the plaintiffs' value is $3,907,200 for A–1 and commercial land and improvements, while defendant's value is set at $5,003,250.

This Court feels the *Pagni* appraiser is too conservative on the main parcel and the debtor's appraiser is far too liberal on the 80–acre parcel. The Court adopts the following appraisals:

| 1. 415.5 acres at $9,500 per acre (defendant) | $3,947,250.00 |
|---|---|
| 2. 80-acre parcel at $3,000 per acre (plaintiffs) | 240,000.00 |
| 3. 10.29 acres commercial at $30,000 per acre (both parties) | 308,700.00 |
| 4. Club Jubilee, 3 duplexes, service station, office and residence (defendant) | 471,000.00 |
| TOTAL — | $4,966,000.00 |

The debt due the Pagni family is $5,356,750; the total secured interests are $5,816,000. In either case there is no equity without considering the items which defendant's appraiser has separately appraised.

The legal question is whether the water and timber have a value separate and apart from the land. The capital improvements, such as wells placed on the property by the debtors, certainly must be added to value, but their cost is not a large amount, perhaps $50,000. The Court does not view value of the aggregate on the property as a separate item, for certainly it will be part of construction of roads and was never contemplated by either party as a separate asset to be sold and removed from the property.

The water and timber are part of the value of the land, but defendant's appraiser contends that there is *excess* water and timber. It was agreed that .8 of an acre–foot of water will serve one household for one year. The residential property is now zoned for one dwelling per acre. It is estimated that 400 dwellings will require approximately 375 to 400 acre–feet of water per year. The Pagni ranch has water decrees and underground water rights which give approximately 4,000 acre–feet of water

three–fourths of which will not be necessary to the development.[7]

Timber on the 80–acre parcel must eventually be "thinned", as well as cut for roads or other development improvements.

There is a separate value to these excess assets. Plaintiffs' appraiser conceded that at least 940 acre–feet of water could be assigned or sold, but contended there would be no buyers because of difficulty of transport, and that $100 per acre–foot would be the most offered. Defendant's witnesses testified that the Callahan property was sold "without water" at $8,412 per acre; that the water was sold separately to a water company; that Carson City purchased water from another landowner for $750 per acre–foot. Water, being the life-blood of this area, must have a price somewhere between $100 and $750 per acre–foot. The rights to divert and take the excess water of approximately 3,000 acre–feet has a value of not less than $300,000, nor more than $2,250,000.

As to the timber, there was no real proof of the number of board feet available or how it would be thinned. A timber scaler was not employed and the proof was too general to rise to the dignity of established value.

Allowing a fair amount for the excess water, it is apparent that a total appraised value of $5,500,000 is reasonable and established.

With a total indebtedness against the security of $5,816,000, the debtor has no equity in the Pagni ranch. There is, however, a slight, but very thin cushion, over and above the present obligation to plaintiffs.

## II.

■ Under Section 362(d)(1), plaintiffs are entitled to adequate protection. That term is not defined in the Code, but includes cash payments as value decreases, *In re Bermec*, 445 F.2d 367 (2d Cir. 1971), additional security liens, *In re Blazon Flexi-*

*ble Flyer*, 407 F.Supp. 861 (D.C.1976), or the "indubitable equivalent". See 11 U.S.C. § 361. The passage of time in these days of inflation may give adequate protection. The value of this property has increased one million dollars per year over each of the last three years, according to plaintiffs' own appraiser. For certain, the property is not going down in value. It was sold, according to plaintiffs' appraiser for an "exaggerated price" of $5,000,000 in 1978. The market value of land has increased tremendously the past two years. Plaintiffs' price of $5,000,000 two years ago must be increased in value today.

■ The time needed to determine whether a reorganization can be accomplished will not reduce plaintiffs' security. True, interest is accruing, but then so is value increasing.

However, nothing should be permitted which *reduces* plaintiffs' protection. In this regard, it will be the condition of the judgment that within 10 days:

1. Defendant must pay and bring all taxes and assessments (Exhibit A) current, and keep the same current, for the reason that taxes are a lien prior to plaintiffs' first deed of trust. NRS 361.450.

2. Defendant must insure for fire and all general risks available, pay the premium, and deliver certificates of coverage to plaintiffs' counsel, showing plaintiffs as beneficiaries as their interest appears, on the Club Jubilee building, residence, duplexes, service station and office building; the coverages to be in such amount as is commensurate with the value of each respective improvement.

3. Make, execute and deliver to plaintiffs a deed of trust on the Burfening real property, subject to prior encumbrances, further securing the balance of principal and interest due plaintiffs.

4. Until the further order of the Court, defendant shall commence monthly payment of interest as agreed at the rate of

---

7. The "right" to water must be distinguished from the existence or production of water. It is assumed by the appraiser that not only does the right exist, but that there is water commensurate with that right.

$1,290 per day, the first payment on August 1, 1980, or the first regular business day thereafter, and the first day of each month thereafter covering the days of the prior calendar month which payment shall be made at the office of counsel for plaintiffs by cashier's or certified check without grace time.

### III.

■ Although there is no equity, still that fact alone is insufficient to grant relief from the stay under Section 362(d)(2). There must also be a showing (the burden being on the debtor) that there is a reasonable possibility of a successful reorganization within a reasonable time. Equity is not essential to reorganization. It is usually the combination of lack of equity and lack of a reasonable possibility of a plan that requires the stay be lifted. Where there is no equity, still a meaningful proposal or offer of further protection will further the stay. However, mere indispensability of the property to the debtor's survival and high hopes is not enough under Section 362(d)(2). See *Automatic Stays Under the New Bankruptcy Law*, 12 U. of Mich.L.J. Ref. 46 (1978).

■ Here the defendant produced an investor willing to spend $200,000 just to put the project into the stage where a map could be filed with the Regional Planning Commission. Further, Mr. Pollock had done a personal feasibility study and was willing to contribute personal funds or obtain other investors for necessary funds for water system and sewer plant. There has already been spent substantial sums to develop an acceptable plan for residential development and a change in the nature and character of the entity was discussed for a joint venture with debtor's principal stockholders. It is at least a good faith showing which must be considered as a reasonable possibility of reorganization, and not merely a hope and a prayer. The debtor filed a plan of reorganization on May 12, 1980. As soon as a disclosure statement is presented to the · Court and approved (11 U.S.C. § 1125(b)), the plan and disclosure state-ment may be submitted to claimants for acceptance or rejection with a subsequent hearing for confirmation.

LET JUDGMENT BE ENTERED for defendant denying plaintiffs' action to vacate the automatic stay, upon the conditions set forth herein. This case shall remain open for any further motion to vacate the stay for breach of conditions of the judgment or further showing on new evidence of lack of adequate protection.