**In re AMERICAN RESTAURANTS MANAGEMENT CORPORATION, d/b/a The Pour House, Debtor.**

**Elwin G. MOODY, Plaintiff,**

**v.**

**AMERICAN RESTAURANTS MANAGEMENT CORPORATION, d/b/a The Pour House, Defendant.**

**Bankruptcy No. 80–01264–BKC–TCB. Adv. No. 80–0287–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Jan. 29, 1981.

Gary I. Zwickel, Lake Worth, Fla., for debtor-defendant.

Lawrence J. Marchbanks, Boca Raton, Fla., for plaintiff.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

In this adversary proceeding, the plaintiff is the holder of a second mortgage on improved real property owned by the defendant-debtor consisting of a restaurant and lounge which is the sole substantial asset of the debtor. Plaintiff seeks to have the court modify the automatic stay by permitting him to complete his foreclosure action in the Florida state court which was instituted prior to, and pending at, the time the defendant-debtor filed its petition under chapter 11 of the Bankruptcy Code in this court.

The trial of this adversary proceeding was commenced and obstensibly completed on November 24, 1980, following which the parties were to submit written arguments and authorities for the court's consideration in reaching a determination. Part of the evidence on November 24, 1980 consisted of a business lease dated October 21, 1980 between the debtor as lessor and C.O.A.R., Inc. as lessee on the said property, which lease was to be for a term of ten years and which was to generate rental income to the debtor of $6,000 per month (Defendant's Exhibit B). While the court was waiting for the written arguments, the plaintiff moved to reopen the evidence based upon the discovery after the November 24, 1980 trial that C.O.A.R., Inc. was no longer occupying as lessee and that the lease had apparently been terminated and not put into full force and effect. The motion to reopen the evidence, based upon this assertion, was granted and further trial was set for January 9, 1981 at which time counsel for both parties appeared and stipulated that no lease for operation of business on the subject property was then in effect and that the business lease (Defendant's Exhibit B) would not be in effect at any time in the future. Therefore, at the present time there is no income from the property since the debtor apparently has not been operating it and producing any revenue whatsoever.

The main proceeding was filed by the debtor on September 29, 1980 and no chapter 11 plan of reorganization has been presented by the debtor to the date hereof.

■ The plaintiff at the outset has conceded that 11 U.S.C. § 362(d)(2) does not apply to the facts in this case since the subject property is the only asset of the defendant-debtor and as such would obviously be necessary to an effective reorganization. Therefore, plaintiff is relying solely on § 362(d)(1) in seeking the modification of the stay to permit him to proceed with his state court foreclosure action. The key issue under the applicable section is whether or not there is cause for modifying or conditioning the stay. Cause can include the lack of adequate protection of an interest in the property.

■ The evidence showed that the plaintiff's second mortgage had been in default since July, 1980 and had a present principal balance of $87,309.96 plus interest since July, 1980 which at the time of the hearing on November 24, 1980 was $2,340.12 and has been accruing at the rate of eight percent per annum since then (Plaintiff's Exhibit No. 1). The evidence further shows that the first mortgage held by Gene Moore, trustee, had likewise been in default since July, 1980 and had a principal balance of $203,401.74 (Plaintiff's Exhibit No. 2).

The plaintiff in order to protect his security had reimbursed the first mortgagee $2,321 for insurance premiums for which the debtor was delinquent and had in addition paid to the first mortgagee $4,052.82 in interest since the debtor's default on the first mortgage.

The parties stipulated that there were existing tax liens against the property in the amount of $24,795, which had been reduced by $2,964 at a tax sale on September 26, 1980.

The total of all these, including debts due to plaintiff and liens against the property superior to plaintiff's second mortgage total $320,000. Only these liens are directly applicable to an analysis under § 362(d)(1) of whether plaintiff's second mortgage is adequately protected, because, in a foreclosure, only these would reduce the proceeds available to pay plaintiff. However, there are other significant liens on the property.

The parties stipulated that there was also a third mortgage on the property in the original amount of $56,000 (which may have been reduced by approximately $6,000 as contended by the defendant-debtor) and a fourth mortgage having a principal balance of $39,000. There is no evidence as to the accrued interest on either of those two mortgages.

There have also been mechanic's liens in the amount of $11,615.88 filed against the property, all or part of which are disputed by the debtor, and there is a judgment of record in favor of the Gulfstream Bank in the amount of $18,648.30. The evidence before the court is not clear as to whether the judgment lien and the mechanic's liens are senior or junior to the plaintiff's second mortgage lien. The total of all of the liens which encumber the subject property therefore exceeds $440,000 plus accrued interest.

Plaintiff elicited testimony from Leonard White, a Boynton Beach, Florida real estate broker, whom the debtor stipulated to be an expert appraiser. His testimony was that the fair market value of the subject property was $330,000 as of November 24, 1980, which was reflected in his appraisal report admitted into evidence as Plaintiff's Exhibit No. 3. The debtor called as its expert Robert Banting, an appraiser of Boynton Beach, who was also stipulated to be an expert. He testified that the fair market value of the property was $470,000 as of November 19, 1980 and his analysis is reflected in his appraisal report admitted into evidence as Defendant's Exhibit A. His estimate of value is on the property subject to the C.O.A.R., Inc. lease which was thought at that time to be valid and subsisting. As is often the case, there is a certain amount of advocacy involved in the testimony of the expert witnesses. The court is of the opinion that neither appraiser is exactly correct and finds that the actual value is between the two extremes. However, the appraisal of the plaintiff's expert, Leonard White, seems to have been more realistic in choosing comparable properties for pur-

poses of his evaluation. Also, while he does not give any great weight to it, Mr. Banting, the appraiser for the defendant-debtor, has considered the C.O.A.R., Inc. lease, which is not now in existence.

While it is not necessary to determine whether or not the debtor has any equity in the property under § 362(d)(1), it is certainly obvious that whatever cushion the plaintiff relied upon in taking his mortgage is rapidly eroding since the debtor is not paying the debt service on any of the liens. It is also apparent that this eroding cushion does not provide adequate protection to the plaintiff. The record reflects nothing to indicate that the debtor is formulating a plan of reorganization or is otherwise becoming rehabilitated. Therefore, the automatic stay is not now performing any economically useful function for this estate and the plaintiff is entitled to receive the benefit of his bargain, at least in part, and if he does not receive it, he should be permitted to seek the remedies which he bargained for in the event of default.

The conditions, hereinafter set forth, in these Findings and Conclusions and in the separate Final Judgment being entered this date, are not intended to make the plaintiff whole or bring all arrearages to date. They are only designed to prevent the plaintiff's security (whatever it might be) from eroding further.

The court finds that for the stay to be continued in effect as to the plaintiff herein, it is equitable that the defendant should make payments as follows on or before the dates indicated:

1. Within thirty days hereof, reimburse the plaintiff the $2,321 plaintiff has paid toward insurance premiums and the $4,052.82 which plaintiff has paid toward interest on the first mortgage.

2. On or before February 28, 1981, pay the monthly payments due in February, 1981 on both the first and second mortgages, to the holders of said mortgages respectively.

3. Commencing March 1, 1981, pay the monthly payments of principal and interest on the first and second mortgages as they become due.

4. Pay the premiums for all insurance required by the first and second mortgages as those premiums become due.

5. Deposit with the court, on or before February 15, 1981, a sum equivalent to one-sixth of the ad valorem taxes assessed against the property in 1980 and thereafter on the first of each month commencing March 1, 1981, a sum equivalent to one-twelfth of the 1980 ad valorem taxes obligation, to be applied to the payment of 1981 ad valorem taxes when they become due.

The failure on the part of the defendant-debtor to abide by any of the requirements set forth herein as incorporated in the Final Judgment being entered herewith, shall upon presentation of prima facie evidence of such failure by the plaintiff or other interested party, result in an order modifying the stay to the extent necessary to permit the plaintiff to proceed with his state court foreclosure action.

As is required by B. R. 921(a), a separate Final Judgment is being entered continuing the automatic stay upon condition that the debtor-defendant comply with the requirements imposed upon it herein.