In re Terry L. KINSETH and Jeaneane E. Kinseth, Debtors.

Robert N. DEMERS, Josephine G. Demers, Leo A. Caron, and Barbara W. Caron, Plaintiffs.

v.

Terry L. KINSETH and Jeaneane E. Kinseth and Harry W. Heid, Trustee, Defendants.

Bankruptcy No. 80–02901–P.
Adv. No. C81–0335–P.

United States Bankruptcy Court, S. D. California.

May 4, 1981.

Eric D. Wolf, San Diego, Cal., for defendants.

Harry W. Heid, San Diego, Cal., Chapter 13 Trustee, pro se.

Joseph J. Fisch, Fisch & Spiegler, San Diego, Cal., for plaintiffs.

## MEMORANDUM OF OPINION

ROSS M. PYLE, Bankruptcy Judge.

This adversary proceeding was filed by holders of a promissory note secured by a second trust deed interest in an triplex owned by the debtors. The matter was heard on April 23, 1981.

The court, after reviewing the pleadings, the Chapter 13 file of the debtors, taking evidence, and hearing the arguments of counsel, announced at the hearing that the automatic stay of the Bankruptcy Code (11 U.S.C. § 362) was to be lifted effective June 7, 1981, subject only to debtors' right to bring before the court any change of circumstances arising in the interim which would justify modification of the relief granted. The purpose of this Memorandum of Opinion is to explain that decision.

## FACTS

In mid-1978 plaintiffs sold the subject triplex to the debtors for the sum of $120,000, taking back a $28,500 purchase money note secured by a second deed of trust. The note bore interest at the rate of 10% per annum and became all due and payable on September 23, 1980.

Debtors failed to pay according to the terms of the note and notice of default was recorded by the plaintiffs on or about October 9, 1980.

On October 15, 1980, the debtors sought relief from the Bankruptcy Court by filing a petition under Chapter 13 of Title 11 of the United States Code.

A modified plan under Chapter 13 was confirmed by the court on February 23, 1981. At that confirmation hearing, Robert Demers, one of the plaintiffs herein, appeared *pro se* and represented to the court that contrary to statements in the debtors' plan, the subject note had become all due and payable before the filing of the petition. The court, by minute order indicated that the plan was confirmed without prejudice to Robert Demers filing an adversary proceeding to be relieved from the automatic stay, in order that the court could fully consider the merits of the Demers claim should he elect to pursue it.

The debtors' Chapter 13 plan provided that monthly payments of $900 are to be paid to the trustee until arrearages owing secured creditors and 100% of all the unsecured claims are paid.

Article IV of the plan provided for "Other Real Estate Creditors" which are those three who are secured by the subject triplex. One provision of Article IV of the plan is as follows:

"6. Debtors hereby waive the provisions of the stay in effect under section 362(a) of the Bankruptcy Code for the limited purpose of allowing the recording of any notice of default and the running of the statutory period for foreclosure. The property shall be noticed for sale on a date certain six months from the date of Confirmation of this Plan. The Court shall retain jurisdiction to enforce the executory provisions of this paragraph, and no sale shall be made hereunder without prior application and approval of the Court."

Pursuant to this provision, which apparently had been negotiated between the debtors and American Savings and Loan, holder of the first trust deed, American Savings and Loan recorded a notice of default on April 7, 1981. This notice of default showed arrearages in the amount of $6,774.14 as of March 27, 1981, and provided that reinstatement of the loan by payment

of the arrearages was available for only three months from the date of recording. *See* Cal.Civ.Code § 2924c.

Evidence presented at the hearing disclosed the following encumbrances against the triplex:

| | | |
|---|---|---|
| American Savings and Loan: | $58,000.00 | principal |
| Unpaid arrearages as of March 27, 1981: (Interest accrues at $526 per month.) | $ 6,774.00 | |
| Demers Second Trust Deed Note as of March 30, 1981, including principal and interest: | $29,086.29 | |
| Kempf Third Trust Deed Note: | $16,000.00 | |
| Real Property Taxes: | $ 1,500.00 | |
| Total | $110,500.00 [1] | |

The Chapter 13 trustee reported that since the confirmation of the plan on February 23, 1981, $1,800 had become due, but the amount paid into the plan was only $1,249.00. From that amount the trustee has remitted to plaintiffs the sum of $106.87, to the first trust deed holder the sum of $467.59 and to the third trust deed holder the sum of $54.00.

Debtors has listed the subject property for sale in February 1981. Only one offer had been received. That offer, at $125,-000.00, fell through as late as March 23, 1981. The real estate broker and Mr. Demers testified regarding the value of the property, and the court finds that its fair market value is $120,000.

The plaintiffs are financially unable to bring up to date the $6,774.00 of arrearages on the first trust deed to protect their position as a junior lienholder. As further amounts accrue, the amount to reinstate will be less and less affordable. July 7, 1981, is the last date for reinstatement.

## DISCUSSION

11 U.S.C. § 362(d) provides:

---

1. Figures are rounded off since all of the American Savings and Loan arrearage is not interest, though the great majority is. Other figures are

consensual approximates except the Second Trust Deed obligation which is accurate.

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

Two grounds for relief from stay are presented here.

The first is that the debtors have no equity in the triplex and it is unnecessary to their plan. The second is that even if the court can find equity, the plaintiffs are not adequately protected by it.

In this case the plaintiffs prevail upon both grounds.

### 1. *Equity in the Property*

This question can be quickly determined upon the facts presented.

Since the encumbrances against the $120,000 property and the anticipated costs of sale total approximately $117,700,[2] the equity position of the debtors is, at best, marginal. Interest upon all encumbrances accrues at the rate of $950 per month, and none of the above encumbrance figures include foreclosure costs or attorneys fees for any of the secured creditors. What equity cushion there may be will soon be gone.

### 2. *Adequate Protection*

Whether or not plaintiffs are adequately protected by the § 362(a) waiver in debtors' plan presents the more important question here. Even if it is assumed *arguendo* that sufficient equity cushion exists to prompt the Court to maintain the stay for the six

months provided by the debtors' plan,[3] other circumstances compel the conclusion that plaintiffs' interest in the property is not adequately protected.

The waiver of the automatic stay in the debtors' plan allows the first, second, and third trust deed holders all to conduct foreclosure sales on or about August 23, 1981. The first trust deed holder has taken advantage of this provision, as noted above, by filing its Notice of Default, setting a last date of July 7, 1981 for reinstatement, and, apparently, plans a sale under the power of sale provisions of its Trust Deed on August 23, 1981.

Plaintiffs cannot afford to reinstate the first trust deed. The $6,774.00 is beyond their unaided economic reach. Once the reinstatement date of July 7, 1981 passes, their position worsens tenfold since they will then be faced with raising the total amount owed to the foreclosing first trust deed holder to protect their interest in the property.

Furthermore, plaintiffs' position as a purchase price money note and deed of trust is such that anti-deficiency legislation in the State of California would prevent the survival of the basic obligation in the event their interest is foreclosed out by the first trust deed holder. *See* Cal.Code Civ.Proc. § 580b; *Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 27 Cal.Rptr. 873, 378 P.2d 97 (1963).

If the automatic stay of the Bankruptcy Code is maintained, these plaintiffs are prevented from pursuing an alternative course which would otherwise be open to them.

They are prevented from going forward with their own trust deed sale in advance of the first trust deed holder. If allowed to do so one of the following would be likely: 1) plaintiffs would acquire title at the foreclosure sale; 2) plaintiffs would be paid at the foreclosure sale by a bidder; or 3) the junior trust deed holder might protect its inter-

---

2. A broker's commission of 5% of the sales price together with an additional approximately 1% to cover other costs of sale total $7,200.

3. *In re Pitts*, 2 B.R. 476 (Bkrtcy.C.D.Cal.1979); *In re Castle Ranch of Ramona, Inc.*, 3 B.R. 45 (Bkrtcy.S.D.Cal.1980); *In re San Clemente Estates*, 5 B.R. 605 (Bkrtcy.S.D.Cal.1980).

est by reinstating both the first and second trust deeds.

Plaintiffs urge that they should be able to proceed to their foreclosure sale in advance of the July 7, 1981, deadline for reinstatement of the first trust deed. They propose that, should they acquire title to the property at such a foreclosure, they would be in a position to obtain financing in order to reinstate the first trust deed. They urge that such relief from the stay would give them both the time and the means to protect their interest in the property.

The debtors argue first that the Court should not consider the particular financial circumstances of the second trust deed holders. Second, they argue that there is a third trust deed holder and plaintiffs are adequately protected by the propensity of such junior lienholders to cure defaults of senior lienholders. Finally, the trustee points to the margin between the sum of the first two encumbrances and the full value of the property which, in his view, although it cannot be described as additional equity cushion, should be described as additional protection for a senior creditor such as plaintiff.

Under the circumstances presented, these three arguments are without merit.

As to the first argument, the Court must take the parties as it finds them and consider their individual circumstances. *See In re San Clemente Estates, supra* at 611; 11 U.S.C. § 362(d)(1).[4]

The second argument about the general propensity of junior lienholders to cure defaults was unsupported by any evidence regarding this particular junior lienholder.

Finally, the "extra" margin represented largely by the value of the third trust deed note does the plaintiffs no good if they are foreclosed out of their interest in the property by the first trust deed holder.

The financial circumstances of the plaintiffs are such that they cannot reinstate the first trust deed without the ability to acquire further financing using their subject property as collateral after their own foreclosure, but *before* the reinstatement period runs, and they seek only 30 days in which to do so.

That time will be granted.

### CONCLUSION

The automatic stay of § 362(d) will be modified to the extent that plaintiffs may proceed to foreclosure sale on or after June 7, 1981. This relief from stay is without prejudice to defendants later seeking modification should circumstances warrant.

The above will constitute Findings of Fact and Conclusions of Law, plaintiffs shall prepare and submit an order to the court within ten (10) days of this Memorandum Opinion.

---

**4.** Section 362(d)(1) provides that the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of *such* party in interest..." (emphasis added).