**LA JOLLA MORTGAGE FUND,**
Plaintiff,

v.

**RANCHO EL CAJON ASSOCIATES, a California general partnership, dba Shadow Mountain, Ltd., dba University Views, Defendant.**

**Bankruptcy No. 81–03370–M11.**
**Complaint No. C82–00026–M.**

United States Bankruptcy Court,
S. D. California.

March 11, 1982.

M. Richardson Lynn, Jr. and Steven L. Klein of Muns, Mehalick & Lynn, Grant D. Telfer, San Diego, Cal., for plaintiff.

James McCafferty of McCafferty & Akers, and Catherine G. Harkless of Treitler & Associates, San Diego, Cal., for defendant.

## OPINION

JAMES W. MEYERS, Bankruptcy Judge.

### I

On January 6, 1982, the plaintiff, La Jolla Mortgage Fund ("Fund"), filed this complaint seeking relief from the automatic stay. In the complaint, the Fund claimed that there is no equity in the property, which constitutes the collateral for two notes held by the Fund, and that the property is not necessary for an effective reorganization of the defendant-debtor, Rancho El Cajon Associates ("debtor"). The plaintiff also urged relief on the ground that the debtor had failed to provide adequate protection for the Fund's interest in the property.

On January 20, 1982, the debtor requested a hearing claiming that there was equity in the property, and it was necessary for an effective reorganization. This was followed by a formal answer, which was filed on January 28, 1982.

A preliminary hearing was scheduled to be held on February 2, 1982. At that hearing, counsel for both parties agreed to waive the preliminary hearing, allowing the stay to remain in place, and reserve all issues until the final hearing could be held. The final hearing was held before this Court on February 25, 1982. At the conclusion of the final hearing, this Court ruled that the automatic stay should be lifted. This opinion is filed to explain this ruling granting relief to the plaintiff.

### II

### FACTS

The plaintiff is the holder of two notes secured by deeds of trust on a single family residence, which was constructed by the debtor-partnership at 7881 Cimarron Lane in the City of La Mesa, California. These notes became all due and payable on July 2, 1981. The debtor defaulted by failing to make the necessary payments on these notes, and the plaintiff recorded notices of default on July 13, 1981. This precipitated the debtor's filing this Chapter 11 proceeding on October 16, 1981.

At the final hearing, it was stipulated by the parties that the total amount now due on the obligations due to the plaintiff is $108,824.17, including principal, accrued interest and other charges. In addition, the parties agreed that there exists a junior lien on the property, in favor of the Imperial Bank, for a note in the amount of $38,000, including accrued interest. Thus, the total encumbrances against the subject property amount to $146,824.17.

To establish the value of the property, the plaintiff presented an appraiser who valued it at $110,000. The debtor presented its own appraiser who calculated that the property had a fair market value of $145,000.[1]

### III

### SIGNIFICANT ISSUE PRESENTED

Whether junior secured claims are to be considered in calculations concerning the existence of a "value cushion," as adequate protection under 11 U.S.C. § 362(d)(1), and

---

1. One of the debtor's general partners testified that the property has a value of $160,000, even though the property has been listed for sale at only $145,000.

in determining the existence of equity in property under 11 U.S.C. § 362(d)(2)(A).

## IV

## DISCUSSION

 The Code is designed to allow Chapter 11 debtors time in which to formulate a plan of rehabilitation, free from creditor pressure. *In re Wolford Enterprises, Inc.*, 11 B.R. 571, 574 (Bkrtcy.S.W.Va.1981). The device used to promote this goal is the automatic stay, which enjoins most creditor action against the debtor and its property, and thereby, prevents a chaotic and uncontrolled scramble for the debtor's assets, and grants a "breathing spell" for debtors to regroup. *Com. of Pa. State Emp. Retirement Fund v. Roane*, 14 B.R. 542, 543 (Dist. Ct.E.Pa.1981); *In re Alyucan Interstate Corp.*, 12 B.R. 803, 806, 7 B.C.D. 1123, 1124 (Bkrtcy.Utah 1981). *See* 11 U.S.C. § 362(a). Of course, the automatic stay acts to frustrate the creditors with secured claims, for they are deprived of a basic ingredient of their bargain, the right to resort to the collateral in satisfaction of the debt. *See In re Pitts*, 2 B.R. 476, 477, 5 B.C.D. 1129, 1130 (Bkrtcy.C.Cal.1979). The Code provides a vehicle with which these creditors can test the continued need for the stay, by requesting relief from the stay under Section 362(d), which reads:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). The Fund has filed its complaint under this section and has requested relief under both subsections of this provision. It alleges under Section 362(d)(1) that there is cause to lift the stay, as its interest in the subject property is not adequately protected, and under Section 362(d)(2) the Fund claims that the Debtor has no equity in the property and that it is not necessary for an effective reorganization of the debtor. Since these remedies are phrased disjunctively in the statute, the Fund need only prevail on one of these alternatives to obtain relief. *See In re Family Investments, Inc.*, 8 B.R. 572, 575, 7 B.C.D. 194, 195 (Bkrtcy.W.Ky.1981); *In re High Sky, Inc.*, 15 B.R. 332, 335 (Bkrtcy.M. Pa.1981).

### A. Adequate Protection

 Under Section 363(e) of the Code, an entity having an interest in property, which the debtor proposes to use, is entitled to adequate protection of its interest. *In re Brickel*, 11 B.R. 353, 355, 7 B.C.D. 957, 958 (Bkrtcy.Maine 1981) (Chap. 13). Congress advanced the concept of adequate protection because, though the creditor might not receive his bargain in kind, the purpose of the provision is to insure that the creditor with a secured claim receive in value essentially what he bargained for. *In re Alyucan Interstate Corp., supra*, 12 B.R. at 807, 7 B.C.D. at 1125. It is derived from the Fifth Amendment protection of property interests and, as such, it must be completely compensatory. *See In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) (L. Hand, J.).[2]

 The creditor's right to adequate protection is limited to the lesser of the value of the collateral or the amount of the secured claim. Comment, *Automatic Stay Under the 1978 Bankruptcy Code: An Equitable Roadblock to Secured Creditor Relief*, 17 San Diego L.Rev. 1113, 1129 (1980) ("Comment"). *See In re Alyucan Interstate Corp., supra*, 12 B.R. at 808, 7 B.C.D.

---

**2.** However, it should be noted that the adequate protection provision is not designed to put the holder of a secured claim in the same position as when the transaction was initially negotiated. *See In re Hutton-Johnson Co., Inc.*, 6 B.R. 855, 860 (Bkrtcy.S.N.Y.1980).

at 1125.[3] While there is some debate as to the operative date for making the necessary calculation of the amount of the claim entitled to adequate protection, it appears that the value on the date, on which the petition commencing the case is filed, should be the benchmark for this purpose. *See Matter of Mulcahy,* 5 B.R. 558, 563 (Bkrtcy.Conn. 1980); *In re Alyucan Interstate Corp., supra,* 12 B.R. at 812 n.18, 7 B.C.D. at 1129 n.18. *See also* Gordanier, *The Indubitable Equivalent of Reclamation: Adequate Protection for Secured Creditors Under the Bankruptcy Code,* 54 Am.Bankr.L.J. 299, 306 (Fall 1980) ("Gordanier"). In enacting the Code, Congress enumerated three non-exclusive examples of how adequate protection may be required in Section 361, as follows:

> (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. *See Matter of Stanley Hotel, Inc.,* 15 B.R. 660, 663, 8 B.C.D. 559, 561 (Dist.Ct.Colo.1981).

Here, the debtor has simply proposed that the collateral itself has sufficient value to constitute adequate protection of the Fund's interest. Shortly after the Code became effective, this Court in *In re San Clemente Estates,* 5 B.R. 605, 6 B.C.D. 838 (Bkrtcy.S.Cal.1980), recognized that in appropriate cases the value of the collateral itself could provide adequate protection.[4] Both this Court, and others, referred to this as the "equity-cushion" approach. *See, i.e., In re Shockley Forest Industries, Inc.,* 5 B.R. 160, 163, 6 B.C.D. 642, 644 (Bkrtcy.N. Ga.1980); *In re 5-Leaf Clover Corp.,* 6 B.R. 463, 466 (S.W.Va.1980); *In re Lee,* 11 B.R. 84, 85 (Bkrtcy.E.Pa.1981); *In re Penn York, Mfg., Inc.,* 14 B.R. 51, 53 (Bkrtcy.M.Pa. 1981); *Matter of Stanley Hotel, Inc., supra,* 15 B.R. at 664, 8 B.C.D. at 562. It has been defined as value in the property above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect. *In re Roane,* 8 B.R. 997, 1000 (Bkrtcy.E.Pa.1981), *aff'd,* 14 B.R. 542 (Dist.Ct.E.Pa.1981). While this approach is valid, the instant case demonstrates that the phrase "equity cushion" is a misnomer. By including the word "equity," we have created some confusion. "Equity" is the value, *above all secured claims* against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors. *See Comment, supra,* 17 San Diego L.Rev. at 1123. Under the requirements of Section 362(d)(2)(A), equity in the debtor's property, or lack thereof, can be relevant and under Section 362(g)(1) the creditor, as the party requesting relief, has the burden of proof on the issue of the existence of equity. However, in considering whether the debtor has provided adequate protection for a creditor's secured claim, we are not concerned with the availability of equity for unsecured creditors. Instead, we are concerned

---

**3.** *See also* 11 U.S.C. § 506, the Code provision governing determination of secured status of claims, and *In re Clark Tech. Associates, Ltd.,* 9 B.R. 738, 740 (Bkrtcy.Conn.1981).

**4.** For some other cases following this approach: *See In re Pitts, supra,* 2 B.R. at 478, 5 B.C.D. at 1130; *In re Rogers Dev. Corp.,* 2 B.R. 679, 683, 5 B.C.D. 1392, 1394 (Bkrtcy.E.Va. 1980); *In re Hutton-Johnson Co., Inc., supra,* 6 B.R. at 859; *In re Riviera Inn of Wallingford, Inc.,* 7 B.R. 725, 729 (Bkrtcy.Conn.1980); *In re Wolford Enterprises, Inc., supra,* 11 B.R. at 574. *But see In re Alyucan Interstate Corp., supra,* 12 B.R. at 811, 7 B.C.D. at 1128.

with whether there is sufficient value in the collateral to protect the secured claim from diminution. A more apt and descriptive phrase would be "value cushion."

■ Of course, since this is a question of providing adequate protection, the debtor has the burden of proof. *See In re Presock,* 9 B.R. 676, 678 (Bkrtcy.E.Pa.1981). *See also In re Roane, supra,* 8 B.R. at 1000 (by implication); *In re Daws,* 13 B.R. 101, 104 (Bkrtcy.Haw.1981); *In re High Sky, Inc., supra,* 15 B.R. at 336 (by implication). Here, the party seeking relief from the stay, the Fund, did take the initiative on the value of the subject property, as it was striking for relief under both prongs of Section 362(d). If it had not placed the issue of equity in question, then the burden would have been entirely on the debtor, even on the question of value, in its quest to keep the stay in place. *See* 11 U.S.C. § 362(g)(2); 124 Cong.Rec. 32,396 (1978).

It should be noted that each case must be approached in light of its individual circumstances. Obviously, the situation involving a greatly oversecured claim will be quite different from the case of an undersecured claim. In the latter case, where the collateral is worth less than the debt, then the claim is secured only to the extent of the value of the collateral, with the remainder being considered as an unsecured claim. *See* 3 *Collier on Bankruptcy,* ¶ 506.03 at 506–6 (15th ed.).[5] If the "value cushion" is small, or if we have an undersecured claim, and the value of the property is not on the rise, then the Court must be more particular concerning the adequacy of the offered protection, especially when it is simply the collateral itself. In such marginal situations, the collateral alone may not be enough, even at an early stage of the proceedings. A debtor may have to offer more than just the property, if it wishes to prevail. *See In re Castle Ranch of Ramona, Inc.,* 3 B.R. 45, 5 B.C.D. 1386 (Bkrtcy.S.Cal. 1980); *In re American Restaurants Management Corp.,* 8 B.R. 596, 599 (Bkrtcy.S.

Fla.1981) (reimbursement of expenses and regular monthly payments); *In re Pannell,* 12 B.R. 51 (Bkrtcy.E.Pa.1981) (Chap. 13) (regular payments). Again, each case will have to be decided on its individual facts, noting that, on this, one of our colleagues has opined that a particular value cushion which "may be adequate protection for a third or fourth mortgagee in one case, may be insufficient to constitute adequate protection for a first mortgagee in another case." *In re Tucker,* 5 B.R. 180, 183, 6 B.C.D. 699, 701 (Bkrtcy.S.N.Y.1980).

■ Turning now to the valuation to be attributed to the subject property. At the trial, the parties strongly contested this question. Since the term "value" is an elusive and illusory concept, this Court can only endeavor to make a reasonable determination based upon the evidence, including the opinions of the two expert witnesses, presented during this trial. *See In re Grundstrom,* 14 B.R. 791, 793 (Bkrtcy.Mass. 1981). This valuation process is not an exact science and the Court must consider estimates and approximations founded upon opinions and assumptions. *In re Tucker, supra,* 5 B.R. at 182, 6 B.C.D. at 701. As Judge Ordin has put it:

> (w)e deal here in likelihoods and probabilities. We do not have techniques or paraphernalia with which to make evaluations or predictions with the finite exactitude known to the laboratory.

*In re Pitts, supra,* 2 B.R. at 478, 5 B.C.D. at 1130. This difficulty is further complicated by the large differences of opinion often found in expert appraisal testimony. *See In re Mikole Developers, Inc.,* 14 B.R. 524, 526 (Bkrtcy.E.Pa.1981). Here, the appraisals presented show an unusually large difference of opinion in light of the fact that this property is a recently constructed single family residence located in a well-settled local community. The Fund's expert testified that the property should carry a fair market value of no more than $110,000. The debtor's expert witness contradicted

---

5. This is in accord with the requirements of the Fifth Amendment which only protects "property" rights. To the extent a claim exceeds the value of the collateral, it ceases to be a property right requiring protection. *Gordanier, supra,* 54 Am.Bankr.L.J. at 305.

this evaluation and suggested that a truer value would be at $145,000. After reviewing all the evidence, this Court must recognize that the currently depressed housing market requires that the debtor's estimate be reduced by 15% to reflect a more prudent and realistic value, one that could be obtained in a reasonable time in this market. This value of $123,250 must be further reduced by an amount sufficient to cover the usual costs of foreclosure and sale. *See In re Pitts, supra,* 2 B.R. at 478, 5 B.C.D. at 1130; *In re Dallasta,* 7 B.R. 883, 885 (Bkrtcy.E.Pa.1980). The debtor's counsel suggested that this deduction be limited to three percent, since it is hoped that one of the debtor's partners will act as a broker in any sale, thereby achieving a savings for the estate. This is not appropriate, for this Court must deduct a sufficient sum to assure that the usual costs incurred in foreclosure and sale will not compromise the allowed secured claim. In this regard, we must evaluate the collateral, being the adequate protection, in the hands of the claim holder. It is the creditors' expected costs to liquidate the property that is relevant, not those of the debtor. Here, a more realistic estimate of such costs would be to deduct seven percent from the fair-market value to cover these costs, leaving a net value of $114,623. *See In re Kinseth,* 10 B.R. 823, 825 n.2 (Bkrtcy.S.Cal.1981).

This brings us to a significant issue raised by the Fund. It argues that in calculating whether its interest is adequately protected by the value of the collateral, it is necessary to consider the junior secured claim in the analysis. The debtor would dispute this approach and argues that this Court should disregard the junior claim, for all purposes, in this action. If the Fund is correct, then this Court would have no choice but to determine a lack of adequate protection, for if all secured claims are considered, it is clear that they exceed the property's value by over $30,000.

However, this Court must reject the Fund's position. The Fund is only entitled to have its secured claim adequately protected, not those of junior claim holders. If the party seeking relief receives the indubitable equivalence of its interest, then the debtor has sustained its burden of providing adequate protection, even in cases where the junior claims are not so protected. 11 U.S.C. § 361. *Accord, In re Gardner,* 14 B.R. 455, 456 (Bkrtcy.E.Pa.1981). *See also In re Mulcahy, supra,* 5 B.R. at 563; *In re Hockstein,* 7 B.R. 261, 263 (Bkrtcy.E.Pa. 1980); *In re Comose,* 7 B.R. 854, 855 (Bkrtcy.S.Fla.1980).[6] Thus, here the net fair-market value is $114,623, with the Fund's claim being $108,824.17, leaving a "value cushion" of $5,798.83. Given the inexactitude inherent in the value calculation in our present economy, it is doubtful that this cushion would be sufficient to provide adequate protection for more than a very short period of time. However, given our conclusion on the Fund's claim for relief under 11 U.S.C. § 362(d)(2) (see below), this Court finds it unnecessary to make a final determination concerning how long the stay could remain in effect.

### B. *Debtor's Equity in Property and Need To an Effective Reorganization*

In addition to challenging the debtor's offer of adequate protection, the Fund relies on Section 362(d)(2), which is limited to cases, such as this, involving a stay of acts against property. This provision was added to the Code as a direct response to situations involving real property mortgage foreclosures where the petition for relief is filed in the Bankruptcy Court on the eve of the foreclosure. *See Matter of Sulzer, supra,* 2 B.R. at 635, 5 B.C.D. at 1317; *In re Family Investments, Inc., supra,* 8 B.R. at 575, 7 B.C.D. at 195. The effect of this section, then, is to allow creditors to imme-

---

**6.** For some more cases where the senior claim was deemed protected even though there was not enough value to cover all secured claims: *See In re Sulzer,* 2 B.R. 630, 634, 5 B.C.D. 1314, 1316 (Bkrtcy.S.N.Y.1980); *In re Rogers Dev. Corp., supra,* 2 B.R. at 686, 5 B.C.D. at 1396–7;

*Matter of Breuer,* 4 B.R. 499, 6 B.C.D. 136 (Bkrtcy.S.N.Y.1980); *Matter of Pleasant Valley, Inc.,* 6 B.R. 13 (Bkrtcy.Nev.1980); *In re Alyucan Interstate Corp., supra,* 12 B.R. at 803, 7 B.C.D. at 1123.

diately proceed against the property where the debtor has no equity, and it is unnecessary to the reorganization, even where the debtor can provide adequate protection under Section 362(d)(1). *In re San Clemente Estates, supra,* 5 B.R. at 610, 6 B.C.D. at 841. *But see In re Saint Peter's School,* 16 B.R. 404, CCH Bankr.Rep. ¶ 68,535 at 80,303 (Bkrtcy.S.N.Y.1982). This provision produces the salutary result of redirecting the debtor's attention away from properties which can be of no help in the reorganization effort and, thus, helps conserve the debtor's energies for the more critical and, hopefully beneficial, issues presented in the Chapter 11 proceedings.

The first question we present is whether the debtor has any equity in the subject property. On this, and nothing else, the party requesting relief has the burden of proof. 11 U.S.C. § 362(g). *See In re Roane, supra,* 8 B.R. at 999; *In re First Century Trust Co.,* 12 B.R. 204, 208 (Bkrtcy. W.Tenn.1981); *In re Bialac,* 15 B.R. 901, 903, 8 B.C.D. 564 (9th Cir. Bkrtcy.App. 1981); 2 Bkr-L.Ed., *Code Commentary and Analysis,* § 15.32 (1979).

The net value of the property has been determined by this Court to be $114,623. Against this, the Fund urges this Court to consider all outstanding encumbrances on the property. The debtor, of course, argues that the junior secured claim should not be considered. It appears that there exists a difference of opinion among the Bankruptcy Courts on this question. Judge King of Philadelphia, in a case involving a claim for relief under 11 U.S.C. § 362(d)(2), has declared that in determining whether equity exists "in the subject property, all encumbrances are totalled, whether or not all the lienholders have joined in the request from the stay." *In re Mikole Developers, Inc., supra,* 14 B.R. at 525. *Accord, In re Gardner, supra,* 14 B.R. at 456 (King, J.). *See also In re Dallasta, supra,* 7 B.R. at 883 (King, J.).

While Judge King's opinions support the Fund, there are two published opinions which appear to support the debtor's view. *In Matter of Spring Garden Foliage, Inc.,* 15 B.R. 140, 143 (Bkrtcy.M.Fla.1981), Judge Paskay emphatically takes a view in support of the debtor's position. *See also In re Wolford Enterprises, Inc., supra,* 11 B.R. at 571. Judge Paskay is correct when he notes that there is nothing in the legislative history to provide guidance in resolving this issue. 15 B.R. at 143. However, this Court finds itself in complete accord with the holdings of Judge King, that all secured claims are totalled to determine equity under Section 362(d)(2)(A), whether or not all secured claim holders have requested relief from the stay, although a different rule should govern questions of adequate protection under Section 362(d)(1). *In re Gardner, supra,* 14 B.R. at 456. As we noted in our discussion on adequate protection, the term "equity" as used in Section 362(d)(2)(A), must mean the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of unsecured creditors and equity security holders. *See Comment, supra,* 17 San Diego L.Rev. at 1123; 11 U.S.C. § 101(16). This is in accord with the policy determination that a "Chapter 11 reorganization should serve to benefit the debtor's interests and not exclusively those of junior lienors." *In re Saint Peter's School, supra,* CCH Bankr.Rep. at 80,303. *See also First Conn. Small Business Inv. Co. v. Ruark,* 7 B.R. 46, 49, 7 B.C.D. 59, 61 (Bkrtcy.Conn.1980). Where no value will be realized to contribute to the reorganization effort, the debtor should not be able to protect property unless it can show it is essential to achieving the reorganization goal.

In this, the debtor argues that this property is needed in its reorganization. If the debtor can sustain its burden of proof on this issue, relief from the stay will not be granted under Section 362(d)(2), even though there is no equity in the property. *See In re Suter,* 10 B.R. 471, 472 (Bkrtcy.E. Pa.1981).

Under Section 362(d)(2)(B), the stay would be lifted if the "property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(B). On this point:

(i)t is not enough for a debtor to argue that the automatic stay should continue because it needs the secured property in order to propose a reorganization. If this were the test all property held by debtors could be regarded as necessary for the debtor's reorganization. The key word under Code § 362(d)(2)(B) is "effective"; the property must be necessary to an effective reorganization. If all the debtor can offer at this time is high hopes without any financial prospects on the horizon to warrant a conclusion that a reorganization in the near future is likely, it cannot be said that the property is necessary to an "effective" reorganization.

*In re Clark Tech. Associates, Ltd., supra,* 9 B.R. at 740. *See In re Dublin Properties,* 12 B.R. 77, 78, 80 (Bkrtcy.E.Pa.1981) (reorganization must be "realistically possible"). Thus, the debtor must show that a reorganization can be anticipated, and that this property has a part to play in the reorganization plan.

To sustain its burden, the debtor has proffered the argument that lifting the stay would likely result in the Fund foreclosing on the property and possibly "selling out" the junior secured claim. If this were to happen, the debtor argues, then the junior creditor could then file a substantial unsecured claim for any deficiency. The debtor is correct that under California law a holder of a nonpurchase-price money note and deed of trust in a junior position can file a claim for any deficiency when "sold-out" by a senior encumbrance. *See* Cal. Code Civ.Proc. § 580b; *Roseleaf Corp. v. Chierighino,* 59 Cal.2d 35, 42–3, 27 Cal.Rptr. 873, 378 P.2d 97 (1963); *Spangler v. Memel,* 7 Cal.3d 603, 610, 102 Cal.Rptr. 807, 498 P.2d 1055 (1972). This is, of course, just one aspect of the continuing problem of junior secured claims being "squeezed" by senior claims. *See In re Alyucan Interstate Corp.,*

*supra,* 12 B.R. at 810 n.14, 7 B.C.D. at 1127 n.14. Now, the theory of the debtor's argument has considerable merit. If the debtor can satisfy certain claims in whole, or in part, from property that has no equity and which has no particular place in the reorganization effort beyond its value in being able to satisfy the claims it secures, then, the debtor may have more flexibility in dealing with the remaining claims with the other assets available. Obviously, such a development would not be for the exclusive benefit of the junior secured claims, for the debtor would derive the very tangible advantage in easing its reorganization labors.[7]

The problem with the debtor's argument in this case is the complete failure of the debtor to present evidence that would support the finding that reorganization is likely and to explain how the minimal value in this property could be useful here in the reorganization. It does not appear, even under the most optimum circumstances, that this property could produce any significant reduction in any Imperial Bank claim. Given this failure of proof, this Court must conclude that the subject property is not necessary to an effective reorganization.

## V

## CONCLUSION

Relief must be granted, under 11 U.S.C. § 362(d)(2), in this action to lift this stay of acts against property, as the debtor has no equity in the property and it is not necessary to an effective reorganization.

The Fund will lodge an appropriate proposed judgment pursuant to this opinion, within seven days.

This opinion will constitute findings of fact and conclusions of law under Bankruptcy Rule 752.

---

7. Of course, this Court always stands ready to hear from the holders of junior secured claims on whether such stays should remain in force. In an appropriate case, the urging of such claim holders may make a difference in the final outcome, as they are entitled to have their interests considered in the equitable balance that this Court is charged to strike. *See In re San Clemente Estates, supra,* 5 B.R. at 611, 6 B.C.D. at 842. *But see In re Saint Peter's School, supra,* CCH Bankr.Rep. at 80,303–05.