In re AEGEAN FARE, INC., Debtor.

AEGEAN FARE, INC., Plaintiff,

v.

COMMONWEALTH OF MASSACHU-SETTS, DEPARTMENT OF REVENUE, Defendant.

Bankruptcy No. 83–01377–L.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 14, 1983.

Bernard P. Rome, Wasserman, Salter & Rome, Boston, Mass., for debtor.

Jeffrey S. Ogilvie, Mass. Dept. of Revenue, Boston, Mass., for plaintiff.

## MEMORANDUM AND ORDER

THOMAS W. LAWLESS, Bankruptcy Judge.

This matter came before the Court on the emergency motion[1] of the Aegean Fare, Inc. (the "Debtor") to compel the turnover of property seized by the Commonwealth of Massachusetts by its Department of Revenue (the "Commonwealth"). At the hearing on October 5, 1983, I found as follows:

---

1. The Debtor filed a verified pleading entitled "Petition for Emergency Hearing" in which it moved for an order of turnover of the assets then being held by the Commonwealth. The Commonwealth correctly objected to this pleading because it did not comply with Bankruptcy Rule 7003 as being in the form of a complaint to properly institute a proceeding to compel turnover. However, for a number of reasons the Court decided to excuse the Debtor's non-compliance with the Rules and address the matter on the merits. The exigencies of the circumstances as detailed in the Debtor's Petition, at the hearing on this matter and by the very nature of Debtor's business, necessitated immediate action on the request of turnover in order to avoid any diminution in the value of the estate. If this matter had come before the Court in the form of a complaint, under these circumstances the Court would have shortened the answer period to one day. See Bankruptcy Rule 9006(c)(1). Moreover, there was sufficient information set forth in the Debtor's verified pleading to inform the Commonwealth of the issues it had to address. Indeed, the Commonwealth came before this Court on October 5, 1983, armed with a memorandum with detailed exhibits attached thereto demonstrating its awareness of the facts at hand, the legal matters in issue and the relief requested. Under these circumstances and in order to effectuate the prompt rehabilitation of this Debtor, the Court deemed it necessary and appropriate to consider the Debtor's pleading and to proceed with consideration of the substantive issues on the merits. 11 U.S.C. § 105; see In the Matter of United Merchants and Manufacturers, Inc., 4 BCD 447, 448 (Bankr.S.D.N.Y.1978); In the Matter of Highlander Sportswear, Inc., 4 BCD 760, 761 (Bankr.S.D.N.Y.1978).

The Debtor owns and operates three restaurants in the Boston area. Beginning in 1975 to the present time, the Debtor has been in various stages of delinquency with respect to its obligation to collect and remit sales taxes owed to the Commonwealth. On Friday, September 30, 1983, the Commonwealth obtained an *ex parte* order in Massachusetts Superior Court authorizing representatives of the Commonwealth to enter the Debtor's premises and levy on and seize the Debtor's property in satisfaction of a claimed delinquency of $312,217.57 in sales taxes pursuant to M.G.L. c. 62C § 53. On October 3, 1983, the Commonwealth took physical possession of the Debtor's premises and the property located thereon under levy. On Tuesday, October 4, 1983, the Debtor filed a voluntary petition for reorganization under Chapter 11 along with an emergency request for turnover of its assets. *See* Note 1, *supra.* The Debtor served its motion on the Commonwealth on the same day and notified the Commonwealth that the Court had scheduled an emergency hearing on the matter the following day, October 5, 1983.

At the emergency hearing on October 5, 1983, several matters became readily apparent. First, the property seized by the Commonwealth was essential to the Debtor's reorganization efforts and, despite its seizure, said property became part of the Debtor's Chapter 11 estate. 11 U.S.C. §§ 541(a)(1), 542(a); *United States v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Second, the Commonwealth's status as a tax collector falls within the scope of those "entities" that are subject to the turnover provisions of 11 U.S.C. § 542(a). *Whiting Pools, supra.* Third, the Commonwealth's seizure did not vest the Commonwealth with ownership of the Debtor's assets as they were assets subject to a levy only. *Id.* Finally, the perishable nature of Debtor's food inventory necessitated immediate action on the Debtor's request for turnover. Since these facts were undisputed and the legal issues conclusively decided by the Supreme Court in *Whiting Pools* in the context of an Internal Revenue Service seizure, the Court found the request for turnover to be fully within its powers. *See also In re Barsky,* 6 B.R. 624 (Bkrtcy.E.D.Pa.1980); *Matter of Troy Indus. Catering Services,* 2 B.R. 521 (Bkrtcy.E.D.Mich.1980) (turnover orders properly entered against state taxing authorities).

Having determined that turnover was authorized under the circumstances, the Court proceeded to address the question of "adequate protection" of the Commonwealth's interest in the levied property. Section 542(a) allows for turnover of "property that the trustee may use, sell or lease under section 363 of this title." Under section 363, the trustee or debtor-in-possession may use, sell, or lease "property of the estate," other than cash collateral, without notice and hearing if done in the ordinary course of business. Section 363 further establishes that, except in the case of cash collateral, the burden is on the entity having an interest in the property being used, sold or leased to request the Court to prohibit or otherwise condition the exercise of the Section 363 authority by the trustee or debtor-in-possession so as to ensure adequate protection of its interest as set forth in Section 361. Once this request is made, the burden then shifts, by the terms of Section 363(d), to the trustee or debtor-in-possession to prove that the entity is adequately protected.

"Adequate protection" is not defined in the Bankruptcy Code, nor is it specified what is entitled to adequate protection other than an "interest in property." The Commonwealth's interest in Debtor's property extends only to property and obligations of the Debtor at the time of levy. M.G.L. c. 62C § 53. The Legislative history of the Code notes that the concept of adequate protection is "derived from the fifth amendment protection of property interests" citing *Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940) and *Louisville Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 338 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787. In *Wright* the

Supreme Court, addressing the constitutionality of the *Frazier-Lempkee Act* (which adjusted the rights of mortgagees in the wake of the Great Depression), held the Act constitutional because: "Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property [the property held by the secured creditor as security].... There is no constitutional claim of the creditor to more than that." *Wright v. Union Central Life Insurance Co., supra,* 311 U.S. at 278, 61 S.Ct. at 199. Thus the "interest in property" entitled to protection is not measured by the amount of the asserted debt but by the value of the lien. In other words, the creditor's right to adequate protection is limited to the lesser of the value of the collateral or the amount of the secured claim. *See, e.g., In re Alyucan Interstate Corp.,* 12 B.R. 803, 808 (Bkrtcy.D.Utah 1981); *LaJolla Mortgage Fund v. Rancho El Cajon Assoc.,* 18 B.R. 283, 8 B.C.D. 1035, 1036 (Bkrtcy.S.D.Ca. 1982). *See also* Gordanier, *The Indubitable Equivalent of Reclamation: Adequate Protection For Secured Creditors Under the Bankruptcy Code,* 54 Am.Bankr.L.J. 299, 306 (fall 1980). It is also settled that the value of the property on the day the petition is filed determines the amount of the claim entitled to adequate protection. *See Matter of Mulcahy,* 5 B.R. 558, 563 (Bkrtcy. D.Conn.1980); *La Jolla Mortgage Fund, supra,* 18 B.R. 283, 8 B.C.D. at 1037. Thus, to the extent that the Commonwealth's lien claim exceeded the value of the Debtor's collateral on the day of the filing, the claim was an unsecured claim, albeit a priority claim, but one which was not entitled to adequate protection. Conversely to the extent that the value of the Debtor's property secured by the lien exceeded the value of the claimed lien, an "equity cushion" or "value cushion" existed which under some circumstances can itself constitute adequate protection. In short, evidence on value is fundamental to the determination of adequate protection.

■ Furthermore, adequate protection under these circumstances is the protection of the creditor's claim from any impairment in value of the claim, including that attributable to the Debtor's use of the property under § 363. The right to adequate protection does not automatically entitle the creditor to cash payment equivalent to its interests. *See In re International Horizons, Inc.,* 15 B.R. 798, 5 C.B.C.2nd 849 (Bkrtcy.M.D. Ga.1981). Nor are the various pre-petition payment agreements entered into by the Debtor and the Commonwealth necessarily the appropriate level of adequate protection of the Commonwealth's interest. Again, evidence of the depreciation and harm resulting to the Commonwealth's property interest from the Debtor's use of the property is part of any calculation of adequate protection.

In the instant case, the Court treated the Commonwealth's objection to turnover of the Debtor's assets as also a request for adequate protection of its interest[2] and the Court asked both parties to address the terms of an appropriate adequate protection order. The Commonwealth, pointing to the terms of various repayment agreements entered into by the Debtor during the years preceding the filing of the petition as indicative of an appropriate level of adequate protection, requested an order re-

---

**2.** Regarding the adequate protection rights of a creditor who is ordered to turnover property to the debtor pursuant to section 542(a), the Supreme Court stated "Section 542(a) simply requires the Service [Internal Revenue Service] to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize." *Whiting Pools, supra,* 103 S.Ct. at 2317. As noted above, absent a request for adequate protection, a debtor may use, sell or lease property of the estate, without notice and hearing, if done in the ordinary course of business. It is incumbent upon the creditor to seek adequate protection of its interest. Absent such a request, adequate protection is not a condition precedent to the entry of an order of turnover. *See In re Alpa Corp.,* 11 B.R. 281, 290 (Bkrtcy.D.Utah 1981) citing *4 Collier on Bankruptcy* § 42.02, at 542–6 (15th ed. 1980). Given the posture and speed in which this matter came before the Court, in all fairness to the Commonwealth the Court raised the question of adequate protection *sua sponte.*

quiring the Debtor to pay $100.00 per day against its current tax liability, $300.00 per day against its outstanding tax delinquency and a $50,000.00 immediate cash payment. Implicit in the Commonwealth's proposal was the assumption that the full amount of its asserted claim in the amount of $312,-217.57 was entitled to adequate protection. As I have explained, this position was untenable. This Court had only to protect the value of the collateral behind the lien and see to it that this value was not diminished. The Debtor proposed an adequate protection order that required the Debtor to pay ongoing taxes on a current basis and $300.00 per week on account of the Commonwealth's asserted claim until certain matters were clarified. The Debtor vigorously disputed the amount of delinquent taxes asserted by the Commonwealth. The Debtor claimed that the Commonwealth's determination of the percentage of Debtor's gross sales subject to sale tax was meaningless in context because the Debtor intended to appeal a September 26, 1983 order of the Department of Revenue's Appeal and Review Bureau affirming the Commonwealth's tax assessment. Furthermore, it became apparent that a significant portion of the Commonwealth's claim was comprised of penalties, the status and treatment of which are uncertain in bankruptcy. *Compare* 11 U.S.C. § 507(a)(6)(G) (penalties only allowed for actual pecuniary loss) *with* 11 U.S.C. § 726(a)(4) (penalties which are not compensation for actual pecuniary loss are subordinate to unsecured claims). *See also In re Idak,* 19 B.R. 765 (Bkrtcy.D.Mass. 1982).

At the emergency hearing on October 5, 1983 on the question of adequate protection, neither party presented any evidence on the issue of the value of the Commonwealth's collateral, nor did either party assert that the Commonwealth's claim was undersecured. While the debtor has the burden of proof on the issue of adequate protection, the creditor has the burden on the issue of the existence of equity, or lack thereof, in the debtor's property. 11 U.S.C. § 362(g)(1). The scant submissions of the Commonwealth regarding the property it had liened and levied upon indicated an inventory of unvalued property compiled by an officer of the Commonwealth's Department of Revenue who had participated in its seizure. The property listed was typical of that which one would find in a low to mid-priced restaurant and take-out operation, ranging from "1 Glenco Door Freezer" to "6½ cases of Ramblin Root Beer." However, the property was not typical of collateral that secures a claim in excess of $300,-000.00 or an "interest in property" that would be entitled to the level of adequate protection requested by the Commonwealth. It must be remembered that the Court was concerned with the value of the liened and levied property which was being turned over to the Debtor and not the total amount of the asserted claim.

On October 5, 1983, a full evidentiary hearing on the issues of adequate protection was not capable of being addressed, not only from the standpoint of the Court's calendar but also due to the lack of available evidence. It was essential, however, to eliminate any danger of diminution in the value of this estate from spoilage or otherwise and to commence the rehabilitation process as expeditiously as possible for the benefit of all the Debtor's creditors. Although the Commonwealth questioned the Debtor's Chapter 11 filing, this matter was not akin to a good faith inquiry. This was not a question of anticipatory bankruptcy based solely upon predictions of future financial ruin, whether it be by labor contract or toxic claim, but a dispossessed business' only hope of recovery. *Compare* Cifelli, *Management Bankruptcy,* Vol. 108, Fortune, No. 9., (Oct. 31, 1983). This demonstrated need and Debtor's showing that there was a reasonable likelihood for successful reorganization warranted that it be given the opportunity to do so.

■ Accordingly, based upon the foregoing and solely as an interim measure put in place in view of the exigencies of the situation and without prejudice to the right of either party to seek a full hearing on the matter, the Court ordered the Commonwealth to terminate its possession of the

Debtor's premises and turnover possession of same to the Debtor, provided, however, that the Debtor make weekly payments to the Commonwealth on account of current meal taxes and $500.00 weekly on account of the disputed tax delinquency. Additionally, § 507(b) of the Code grants a super-priority to post-petition creditors in the event that the adequate protection requirements of § 361 prove to be inadequate. Such claim is given priority over every other allowable administrative claim.

Accordingly, the Court will schedule an evidentiary hearing on value as soon as its calendar permits. Because the value of the property standing as security for the Commonwealth's position is crucial, the following pre-trial order will take effect in lieu of the Court's customary order:

(1) Both parties shall file within three (3) days a list of the property defined in the foregoing paragraph, with asserted values thereto, along with affidavits supporting the parties respective value positions.

Finally, the Debtor shall file its Schedules and Statement of Affairs within (5) days of the entry of this Memorandum and Order.