### In re HAGEL PARTNERSHIP LIMITED, Debtor.

### Bankruptcy No. 84–75.

United States Bankruptcy Court,
District of Columbia.

June 15, 1984.

Howard B. Teller, Washington, D.C., for debtor.

Nelson Cohen, Bethesda, Md., for creditors Rose & Samuel Cofer.

## ORDER

GEORGE FRANCIS BASON, JR., Bankruptcy Judge.

Upon consideration of the motion seeking relief from the automatic stay (11 U.S.C. § 362) filed by Samuel and Rose Cofer, the hearing held on April 26, 1984 and the record of this case, the Court finds and concludes as follows:

1. When the debtor missed two regular monthly deed of trust payments, in December 1983 and January 1984, the movants/secured creditors scheduled a foreclosure sale in February 1984 on the property which constitutes the debtor's principal asset. That asset is an aging, five-story, walk-up, 21-unit unit apartment building in the Mount Pleasant area of this city which the debtor purchased from the movants in 1980. The debtor filed its Chapter 11 petition on February 15, 1984, shortly prior to the scheduled foreclosure. Six days later the secured creditors filed their motion for relief from the stay.

2. For the following reasons, the Court finds for purposes of this motion that the value of the property which the movants seek to foreclose is $275,000:

(a) This amount is essentially the same as the tax assessment on the property, which by law is supposed to be the same as the value of the property. The tax assessor is neutral as between the two contending parties.

(b) The $275,000 amount is approximately midway between the two appraisals offered by the two parties.

(c) $275,000 is the amount for which the movant sold the property to the debtor in 1980.

(d) Neither of the two appraisals is very satisfactory.

(i) The movant's appraisal is based entirely on comparable sales; but it is obvious and the movant's appraiser acknowledged on cross-examination that the "comparable" properties are not truly comparable, being in entirely different areas of the city and not the same size. Moreover, the "comparable" properties are in better condition than the subject property. For these reasons the movants' appraiser had to make extensive adjustments in order to arrive at an estimated value for the subject property. Unfortunately he did not attach to his appraisal or bring to court his computations of these adjustments. The necessity for extensive adjustments would obviously, as he acknowledged, render the appraisal less accurate than if truly comparable sales figures were available.

(ii) The debtor's appraisal is based entirely on income; but, instead of being based on the debtor's actual or even projected income from the property in its present condition, it is based on projected income from the property after certain improvements are made, minus the projected costs (including financing costs) of those improvements. However, there is no evidence that this debtor will in fact make these improvements or can obtain the needed financing; and in any event this pyramiding of projections, like the pyramiding of adjustments in the movant's appraisal,

renders the final resulting figure less accurate than it would otherwise be.

3. According to the testimony of the movant Samuel Cofer, the unpaid balance on the deed of trust note as of March 15, 1984 was $259,606.68, including $227,500 principal and $32,106.68 accrued interest. In addition, foreclosure expenses of $1150 for advertising and $200 for trustee's fees were incurred. In addition, it appears that a substantial real property tax bill is due, although (according to the testimony of the debtor's general partner David Rae) the precise amount of tax due (including not only normal taxes but also a lien claim for services or repairs allegedly provided by the D.C. Government and assessed against the property) is in dispute. At any rate, the most reliable figure presented at the hearing appears to be that the D.C. Tax Office claims $21,534.30, but a substantial portion of that claim is disputed by the debtor.

4. For purposes of this motion, the Court will utilize the above-stated figures, to arrive at the conclusion that the liens on the property, as of the date of the petition, most likely total approximately $282,500. Since the liens exceed the value of the property, there is no equity. Therefore, the Court concludes that the movants have met their burden of proving lack of equity.

5. However, that does not end the inquiry. The motion must be denied if the debtor can meet its burden of proving that the property is necessary for an effective reorganization and that the creditors' interests can be adequately protected by periodic payments or by other means.

6. Since the property is essentially the sole asset of the estate, it is obvious there can be no reorganization without it, and in that sense the property is necessary for an effective reorganization.

7. In addition, based on the testimony of the debtor's general partner David Rae, the Court is convinced (at least at this early stage of this case) that an effective reorganization is reasonably probable. The Court finds Mr. Rae to be a highly credible witness. He testified that he had made substantial physical improvements to the property since purchasing it from the Cofers; that tenant relations were much better than under the Cofers; and that further significant improvements, with concomitant revenue enhancements, were in process. He presented cash flow figures which showed future ability to meet all obligations. He explained that the debtor's two-month arrearage which precipated the movant's scheduled foreclosure was caused by rather large and unusual repairs required in those months, which were needed in part because of the generally deteriorated condition of the property at the time the debtor purchased it from the movants. He testified further that, in addition, ordinary expenses in those winter months are the highest of the year because of fuel costs, while rental income remains level. The Court finds all of this testimony to be accurate, based on its evaluation of the demeanor and credibility of this witness.

8. Therefore, the Court concludes that the debtor has met its burden of proving that the property is necessary for an effective reorganization. Compare *In re C.F. Simonin's Sons, Inc.*, 28 B.R. 707, 711, 712, 10 B.C.D. 343 (E.D.N.C.1983), permitting use of cash collateral even though "the Debtor's chance of successful reorganization is highly speculative," where "It is too early in this case to conclude that there is no prospect of reorganization."

9. The remaining inquiry concerns adequate protection. Adequate protection need consist only of preserving the *status quo* as of the date of the petition. *In re Aegean Fare, Inc.*, 33 B.R. 745, 748 (Bkcy. D.Mass.1983).

10. Regular monthly payments at the present time are $1,420.83 per month, due on the 15th day of each month. Pre-petition arrears are $2,841.66, plus foreclosure costs, plus unpaid taxes due to the D.C. Government. So far as appears from the record, post-petition arrears consist at most solely of the regular monthly payment due on February 15, 1984, the very day the petition was filed. (Ordinarily, and if the

debtor were to raise the issue, this Court would consider such arrears to be pre-petition rather than post-petition. However, in this case, the debtor has proposed, in response to the pending motion, to pay off first post-petition and then pre-petition arrears at the same monthly rate, which certainly is in the long-term best interests of the debtor and the estate.)

11. The debtor has proposed adequate-protection payments to cure all arrears at the rate of $300 per month, in addition to regular monthly payments, with the first such payment due April 30, 1984, and subsequent payments due on the 15th day of each month thereafter, beginning May 15, 1984, with the same ten-day grace period as provided in the deed of trust note for the regular monthly payments.

12. At this rate, the post-petition arrears will be substantially cured in three months and fully cured in four months after the hearing date, which was April 26, 1984. The Court has no doubt that this is a reasonable period of time for curing post-petition arrears in a Chapter 11 case.

13. Consideration of what would be a reasonable time to cure pre-petition arrears can appropriately await the filing of a plan under 11 U.S.C. § 1123, assuming a plan is filed reasonably soon. Thus, the creditors' objection that the debtor's adequate-protection proposal fails to provide for curing pre-petition arrears within a reasonable time is premature.

14. The Court is fully cognizant of the negative-amortization and balloon-payment features of the deed of trust note at issue in this case. Those features may no doubt become highly relevant at those times in the future when (on October 15, 1985) higher regular, interest-only, monthly payments become due under the terms of the note ($2,631.30 instead of $1,420.83), and when (on September 15, 1990) the entire principal amount of the note becomes due. As of the former date adequate protection will probably require payment of the full $2,631.30 per month. And as of the latter date the debtor will presumably have to refinance the note (unless perhaps the debt-

or can present a confirmable plan modifying the term of years of the existing note). *See* 11 U.S.C. § 1129(b)(2)(A)(i)(II); *and see Pusareti et al.,* "Section 1111(b) of the Bankruptcy Code: How Much Does the Debtor Have to Pay and When Should the Creditor Elect?", 58 Am.Bankr.J.J. 129 (1984). (Of course neither of those questions is now before the Court, and the Court makes no decision concerning either of them.)

15. Ordinarily, preserving the *status quo* as of the date of the petition would include paying full accruing interest on the secured portion of the debt (although not on that portion that is unsecured). Thus, in this case, the movants could credibly argue (although they have not so argued) that adequate protection requires payment of the full $2,631.30 monthly interest amount. However, in this case:

(a) That is not what the secured creditors have in fact argued. They have argued lack of equity on the ground of negative amortization, but they have prevailed on the equity issue on other grounds anyway. (See ¶ 4 above.) They have objected to the debtor's proposal to cure pre-petition arrears over an extended period of time on the ground that too long a time will be required at the $300-per-month rate. But they have not argued that adequate protection requires payment of the full $2,631.30 per month plus some additional amount to cure arrears.

(b) Even if they were to make such an argument, this Court would reject it, on the ground that the movants are bound by the terms they agreed to when they sold the property to the debtor, and on the further ground that they are estopped to change those terms now, having gained the benefit of a sale at what was no doubt a top price. Having in their original bargain assumed and accepted the risk that the property would not appreciate in value sufficiently to cover the increased debt resulting from the negative amortization feature, they should not now be permitted to shift

that risk to the debtor under the guise of "adequate protection."

16. One further problem remains as to the adequate-protection issue. Although testimony at the hearing was not entirely clear, it appears that the property may have been sold at a tax sale for non-payment of taxes, and the statutory redemption period may expire within the next year. Adequate protection to the secured creditors obviously includes redemption of the property from any tax sale.

NOW THEREFORE IT IS ORDERED, on June 15, 1984, *nunc pro tunc* as of April 26, 1984, that the motion of Samuel and Rose Cofer for relief from the stay be and hereby is denied without prejudice,

PROVIDED that the Debtor Hagel Partnership Limited shall increase its payments to the movants to $1,720.83 per month, with the first payment to be made on April 30, 1984, and subsequent payments of the same amount to be made by the 15th day of each month thereafter, commencing May 15, 1984, with a ten-day grace period (until the 25th day of each month) until all post-petition arrearages are paid, and

FURTHER PROVIDED that the debtor shall serve on the movants and file in this Court on or before July 15, 1984 a report on the current status of real property tax liabilities on the property, supported by appropriate documentation certified by the D.C. Tax Office, and such report shall include a provision specifying that the debtor will redeem the property from any tax sale no later than one month prior to expiration of any redemption period; and on August 15, 1984 and on the 15th day of each month thereafter until the property has been redeemed, the debtor shall serve and file a similar report, including in the last such report proof of redemption;

AND IT IS FURTHER ORDERED that, if the Debtor fails to make the payments or file the reports specified above, then the movants may serve and file a notice of default, and two days thereafter the automatic stay against lien enforcement will automatically terminate, so as to permit the movants to foreclose.

AND IT IS FURTHER ORDERED that, after post-petition arrears have been cured, and unless this Court hereafter orders otherwise, the debtor's extra payments to the secured creditors shall continue at the same $300-per-month level as specified above, in order to cure pre-petition arrears, but without any automatic termination of the automatic stay if the debtor fails to do so; and, after the property has been redeemed from any tax sale, the debtor shall cure all other arrears on its real property tax liabilities, and the debtor shall also pay all current real property taxes when due, and shall serve and file monthly reports with appropriate supporting documentation showing that these things have been done, but without any automatic termination of the automatic stay if the debtor fails to do so; and, should the debtor default in either of the above monthly-payment and tax-payment obligations, the secured creditors may renew their motion for relief from the automatic stay.