**In re Benjamin E. TOPPER, Barbara J. Topper, Debtors.**

**Bankruptcy No. EF11–83–01471.**

United States Bankruptcy Court, W.D. Wisconsin.

May 15, 1985.

Mart W. Swenson, Eau Claire, Wis., for debtors.

Steven J. Kirschner, Ross & Stevens, S.C., Madison, Wis., for Travelers Ins. Co.

### FINDINGS OF FACT, CONCLUSION OF LAW AND ORDER LIFTING STAY

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Travelers Insurance Company, by Ross & Stevens, S.C., having filed a request for relief from stay or for adequate protection; and hearings having been held; and Travelers appearing by Attorney Steven J. Kirschner; and Debtors Benjamin E. and Barbara J. Topper appearing by Attorney Mart W. Swenson; and letter briefs having been filed; the Court being fully advised in the premises, FINDS THAT:

1. On September 14, 1983, Debtors Barbara J. and Benjamin E. Topper filed for relief under Chapter 11 of the Bankruptcy Code.

2.

On or about December 1, 1982, the debtors executed and delivered to Travelers a promissory note in the principal amount of $350,000.00. Interest only payments, at the rate of 14.75% per year, were due on January 1, 1983 and semiannually thereafter. The note was scheduled to mature January 1, 1988.

To secure their obligations to Travelers under the promissory note, the debtors executed and delivered to Travelers a mortgage in the principal amount of $350,000.00. Under the mortgage, the debtors mortgaged to Travelers approximately 397 acres of real estate in Dunn County, Wisconsin.

The mortgage is a first and paramount lien against the real estate. The debtors' schedules and disclosure statement reveal a second mortgage to United Bank of Menomonie, in an amount in excess of $80,000.00.

The debtors defaulted under Travelers' note and mortgage by failing to make the interest payments due on January 1, 1984 and thereafter. As of January 21, 1985, the debtors owed Travelers principal and accrued interest of $438,112.53. Additional interest was accruing at the rate of $172.73 per day, or approximately $5,200.00 per month.

. . . . .

The debtors' schedules and appraisal suggest that the real estate has declined from a value of $450,000.00 in October, 1983 to a value of $324,000.00 in January, 1985, a decline of $126,000.00 in 15 months. The Debtors' own estimates of value thus demonstrate a decline in the value of Travelers' security of approximately $8,400.00 per month.

Travelers' appraisals demonstrate a similar decline in value. Mr. Hague's appraisals show a value of the real estate in August, 1984, of $414,000.00 and a decline to $354,000.00 in March, 1985, a decline of $60,000.00 in 7 months. Travelers' figures average out to a decline of over $8,500.00 per month.

.    .    .    .    .

The debtors have offered adequate protection to Travelers of ... $3,500.00 per month.[1]

The debtors' offer of adequate protection consists of two elements, an "interest component" and a "depreciation component". The debtors offer Travelers $3,000.00 per month as interest. They compute this figure by reducing the amount of their appraisal ($324,000.00) by outstanding real estate taxes ($24,000.00). They then compute interest at the rate of 12% per year on the net amount of $300,000.00. Additionally, the debtors offer Travelers $500.00 per month ... to compensate it for the declining value of Travelers' security.

Travelers Letter Brief (filed Apr. 24, 1985); *see* Topper Letter Brief (filed Apr. 25, 1985) ("no dispute with the basic facts" in Travelers brief).

3.   Under 11 U.S.C. secs. 361 & 362(d)(1), the court shall, if requested, grant relief from the automatic stay for cause, including the lack of adequate protection of the value of a secured creditor's interest in estate property during the period between the filing of the petition and the confirma-

tion of a plan (or dismissal of the case). *See In re Aegean Fare, Inc.*, 33 B.R. 745, 748 (Bankr.D.Mass.1983) (protectable value determined on date of petition), *In re Paradise Valley C.C.*, 31 B.R. 613, 614 (D.Colo. 1983) (confirmation of plan terminates stay).

4.   Some courts, looking to the value of a creditor's interest within a bankruptcy proceeding, conclude that the value of the collateral must be adequately protected.[2] *E.g., In re South Village, Inc.*, 25 B.R. 987, 9 B.C.D. 1332 (Bankr.D.Utah 1983) (value does not include opportunity costs). Other courts, looking to the value of a creditor's interest *but for* the bankruptcy proceeding, conclude that the *present* value of the collateral to the creditor must be adequately protected.[3] *E.g., In re American Mariner Ind., Inc.*, 734 F.2d 426, 12 B.C.D. 227 (9th Cir.1984) (value includes opportunity costs).

5.   Many courts require that an oversecured creditor's *debt* be adequately protected. *E.g., In re Carson*, 34 B.R. 502, 506 n. 7, 11 B.C.D. 251, 253 n. 7 (D.Kan.1983) ("equity cushion" as bargained for protection of secured creditor's lien). *But see generally*, Weintraub & Resnick, *Puncturing the Equity Cushion—Adequate Protection for Secured Creditors in Reorganization Cases*, 14 U.C.C.L.J. 284 (1982).[4]

6.   This rule applies in the Western District of Wisconsin, *In re Schaller*, 27 B.R. 959 (W.D.Wis.1983) (stay lifted where mushrooming debt not protected by equity cushion).

---

1.   (by the Court) This offer has now been increased to $4,000 per month.

2.   While it has been said that "the creditor's right to adequate protection is limited to the lesser of the value of the collateral or the amount of the secured claim", *Aegean Fare,* paragraph 3 *supra,* the amount of an oversecured creditor's claim may increase to equal the value of the collateral. *See* 11 U.S.C. sec. 506(b) (post-petition interest allowed to the extent that value of collateral exceeds value of claim). The operation of 506(b) in a case involving multiple security interests is unclear.

3.   In the usual case, the secured creditor would seek protection for the present value of its fore-

closure interest under *American Mariner.* In a case involving rapidly depreciating collateral, such as the one at bar, the second creditor would seek protection for the value of the collateral under *South Village.*

Note that the "present value of the collateral to the creditor" may exceed the foreclosure value where the Debtor is motivated to avoid foreclosure. *See* 11 U.S.C. sec. 506(a) (valuation in light of proposed disposition or use of secured property).

4.   It is not clear why the marginally oversecured creditor should be able to obtain relief from stay for failure to service debt while the marginally undersecured creditor can not.

7. Travelers was oversecured at the time the Debtors filed their petition for relief; its total protectable debt now exceeds $450,000.

8. The Debtors may adequately protect Travelers' debt by periodic cash payments which, in conjunction with the current value of the secured property, guarantee that Travelers will receive the indubitable equivalent of its debt. 11 U.S.C. sec. 361; *Schaller*, paragraph 7 *supra*.

9. Periodic payments would be adequate in this case if they included components to compensate Travelers for (1) the difference between the current value of the secured property and the current debt, (2) any further depreciation in the secured property and (3) accruing interest.

10. The Debtors' offer of $4,000 a month would not even compensate Travelers for its currently unsecured portion of its debt within a reasonable period of time.

## CONCLUSION OF LAW

Travelers' interest is not adequately protected.

## ORDER

IT IS ORDERED THAT the 11 U.S.C. sec. 362(a) automatic stay in this matter be, and the same hereby is, LIFTED, to permit Travelers Insurance Company to proceed to recover and dispose of the real estate securing its debt.