In re JoAnn C. HAMMOND, Debtor(s)

JoAnn C. Hammond, Plaintiff(s)

v.

The Allegheny County Treasurer, The Wilkinsburg Penn Joint Water Authority, The Borough of Wilkinsburg, and The Wilkinsburg Borough School District, Defendant(s).

Bankruptcy No. 08–26968.
Adversary No. 09–2008.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 15, 2009.

Mary Ellen Droll, Neighborhood Legal Services, Pittsburgh, PA, for Plaintiffs.

Jordan Tax Serv. The Allegheny County Treasurer, pro se.

Wilkinsburg–Penn Joint Water Authority, pro se.

Kevin H. Buraks, Portnoff Law Associates, Norristown, PA, for Defendants.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The central issue before the court in this § 506 action to determine the secured status of certain tax liens is whether the Debtor may redeem real property that was sold at a sheriff's sale prepetition. Debtor wants to retain the property free and clear of tax liens other than those held by the purchaser at the sale. Defendants Wilkinsburg School District and Borough of Wilkinsburg contend that the Debtor has no standing to pursue this Adversary. For the reasons which follow, we conclude that the Debtor has standing and may exercise her statutory right of redemption through her chapter 13 plan.

Certain facts are undisputed. Debtor is a widow who resides at 1531 Foliage Street in Pittsburgh, Pennsylvania. She is the heir to the real property that is subject to the tax liens. The property is titled in the name of her deceased husband. It was sold at a sheriff's sale in August, 2008, because real estate taxes had been unpaid for many years.[2] GLS Capital, one of the tax claim holders, was the successful purchaser. The sale price was $2,090.62, representing GLS Capital's costs. The sheriff acknowledged the deed to GLS Capital on September 23, 2008. Debtor filed her chapter 13 bankruptcy on October 20, 2008.[3] She plans to pay GLS Capital $12,623.00 for delinquent real estate taxes and to divest the other taxes as unsupported by value in the collateral. Whether she can do so, however, depends on the value of the property. Debtor obtained an appraisal in November of 2008 that determined the fair market value of the property to be $10,000. The Wilkinsburg taxing authorities do not agree with that value, contending that because the tax assessment roll and Debtor's bankruptcy schedules list the fair market value at $28,500, she is estopped from asserting a different value. The value of the real estate itself is not before the court at this time. The court is of the view that, absent agreement of the parties to the value, an evidentiary hearing will be needed to determine the matter.

Courts disagree as to whether tax assessments are hearsay, although the majority of cases reviewed by this court indicate that tax assessments can constitute an agency records exception to the hearsay rule. *See* Fed.R.Evid. 803. *Compare In re Chen*, 2009 WL 3754672 (Bankr. E.D.Va., Nov.3, 2009)(tax assessments are admissible regarding value under the agency records exception to Fed.R.Evid. 803), *with In re Digby*, 47 B.R. 614 (Bankr. Ala.1985)(tax assessments are hearsay). However, in the matter before us, Debtor's appraisal is more recent than the assess-

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. Sewer rents and municipal fees date back to 1991. Unpaid real estate taxes date back to at least 1997.

3. Pursuant to 53 P.S. § 7293(a), the owner of property sold under a tax claim may redeem within nine months from the date of the acknowledgment of the sheriff's deed by paying, *inter alia*, the amount bid at the sale, the costs of the sheriff in acknowledging and recording the deed, all tax and municipal claims, etc.

ment and represents an expert opinion of value which has yet to be presented through testimony.[4] Assuming without deciding that Debtor's use of the tax assessed value in her schedules is evidence of her opinion of value (and we note that Debtor is competent to testify to the value of her realty),[5] expert testimony is also evidence of value. Here, the recently appraised value does not coincide with the scheduled value. Further proceedings will be set to address valuation.

GLS Capital has not objected to redemption of the property through Debtor's chapter 13 plan which calls for Debtor to pay the full amount of GLS Capital's claim. The Wilkinsburg School District and the Borough of Wilkinsburg[6] contend that Debtor cannot escape liability for their tax liens by paying only the redemption price because otherwise any debtor could use the Bankruptcy Code to avoid tax obligations. In their view, the applicable redemption statute in Pennsylvania requires the redeeming owner to make *all* of the required payments. Debtor contends that the liens are actually unsecured claims because the property value of $10,000 will be paid in full through the plan to GLS Capital in order to satisfy the tax lien it holds as the inchoate owner of the property. Because GLS Capital's claim exceeds the appraised value of the collateral, Debtor's position is that there is no equity to support payments to other taxing bodies, despite their liens.

There are several related issues before the court. The first is a determination of the nature of the tax sale purchaser's claim. It is not disputed that upon the death of her husband in May of 2008, Debtor became the legal owner of the property. As of the date of the tax sale, Debtor was still the owner. Under Pennsylvania law, a purchaser at a tax sale acquires an inchoate, defeasible title which does not change the status or title of the property owner until the redemption period has passed. *Appeal of Singer*, 7 A. 800, 801 (Pa.1887). *See also City of Philadelphia. v. Woodside*, 10 Pa. D. & C. 565 (Pa.Com.Pl., 1928). *See also* 72 P.S. § 5941.3 (a tax sale purchaser takes real estate free and clear of delinquent taxes subject to the right of redemption). The purchaser's only absolute interest in the property until the redemption period expires is to receive the money paid on redemption. *Shalemiller v. McCarty*, 55 Pa. 186, 188 (Pa.1867). The purchaser has no claim to possession or ejectment against an owner during the redemption period. *Easton v. Sulkin*, 19 Pa. D. & C. 152 (Pa.Com.Pl., 1933). *See also* 72 P.S. § 6071 (right of redemption).

The Wilkinsburg taxing bodies challenge Debtor's standing to bring this adversary action, asserting that standing does not exist until she has paid the full redemption amount.[7] Their contention is

**4.** The case was filed October 20, 2008, and the appraisal was done in November of 2008. Although there is no evidence of when the tax assessment was made, there have been no recent assessments in Debtor's county of residence. We note that even if the assessment is hearsay and Debtor wants to rely on it as her opinion of value, she is not precluded from getting an expert opinion as well.

**5.** *See, e.g., In re Martin–Trigona,* 760 F.2d 1334, 1344 (2nd Cir.1985)("ordinarily the

owner of property is competent to testify to its value").

**6.** The other two defendants in this Adversary have not responded to the complaint.

**7.** Section 6091 provides that owners of unseated lands may redeem within two years but the owner must offer to pay the amount of the taxes for which land sold, in addition to costs plus 15 percent. Section 6071 provides that the right of redemption that exists for seated [occupied] lands that have been re-

without merit. The Debtor's interest in property is determined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 297 (3d. Cir.), *cert. denied* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000). Because under Pennsylvania law the purchaser's title is not absolute until the redemption period has passed without payment, the Debtor's interest in the property is property of the bankruptcy estate under § 541(a)(1) of the Bankruptcy Code. Thus, Debtor has standing to address claims against her interest in the property that is her residence and that she seeks to retain by paying creditors through her plan.

■ Notwithstanding the foregoing, the question remains whether Debtor can use the Bankruptcy Code to stretch out payments as a means of redemption. Debtor is not the first to use chapter 13 in this fashion. In *In re Kasco*, 378 B.R. 207 (Bankr.N.D.Ill.2007), the court permitted redemption through a chapter 13 plan where debtors filed their chapter 13 prior to the expiration of the redemption period following a sale of their property in a prepetition tax sale. The court found that, pending redemption, the purchaser had a claim against the debtors for purposes of bankruptcy law and the claim encompassed the right to obtain the real property if no redemption occurred. However, while the redemption was in progress, the purchaser had something less than title in fee. *Id.* at 214. The court determined that even though the tax sale purchaser's claim is enforceable *in rem*, the claim could still be addressed in the chapter 13 plan because, under § 1322(b)(2) of the

Bankruptcy Code,[8] a debtor has the ability to modify secured tax claims in the plan.

Another case in Illinois followed suit. In *Salta Group, Inc. v. McKinney*, 380 B.R. 515, 521 (C.D.Ill.), *affirmed* 380 B.R. 515 (C.D.Ill., 2008), the court concluded that the tax sale purchaser possessed a claim that could be modified in bankruptcy and that § 1322(b)(2) enables a debtor to make payments in installments over the life of the plan. *Id.* at 518, 524. We agree with the Illinois courts. Debtor's proposed use of chapter 13 to accomplish the redemption is permissible.

■ The next question is whether the tax liens can be stripped down to the value of the collateral. This court has previously determined that § 506 of the Bankruptcy Code authorizes a debtor to strip down a wholly unsecured third mortgage held by a government creditor. In *In re Korbe*, 386 B.R. 585 (Bankr.W.D.Pa.2008), the court noted that § 506 does not permit the court to ignore a valid lien stripping action in the name of equity and that the *in rem* nature of the claim favored use of § 506 to ensure that creditors with liens against valuable assets receive the benefit of the value of the collateral, but no more. 386 B.R. at 589. Thus, the Debtor in this case appropriately seeks to value the collateral and to determine the secured claims against that collateral through this action. Whether the liens can be stripped off depends, as stated above, on the value of the collateral, which determination has not yet been made.

Finally, we consider what will happen if the liens are stripped and Debtor fails to

---

turned to the county commissioners for nonpayment of taxes and which have been sold in satisfaction of the taxes is the same as for unseated.

**8.** In *Rankin v. DeSarno* 89 F.3d 1123, 1127 (3d. Cir.1996), *cert. denied*, 519 U.S. 1108,

117 S.Ct. 943, 136 L.Ed.2d 832 (1997), the Court of Appeals held that a tax sale purchaser does not have a "security interest" in real property for purposes of § 1322(b)(2), which, therefore, can be used to modify the purchaser's claim.

complete the redemption. The Wilkinsburg taxing authorities contend that it is premature for Debtor to assert this cause of action because of the possibility that she will not, in fact, redeem the property. We disagree. There is always the possibility that a plan will not complete. A § 506 action is a vehicle by which a debtor can determine which claims must be paid, and at what amount, through a plan. Its use is most effective early in the case. In the event the Debtor does not complete her plan, the applicable law will determine the consequences that follow.

An appropriate order will be entered.

### ORDER

**AND NOW** this **15th** day of **December, 2009,** for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED** that Debtor may redeem the real property sold at tax sale through her Chapter 13 plan for the amount of the taxes paid by GLS.

It is **FURTHER ORDERED** that because the parties have not agreed on the value, discovery as to valuation of the real property is open. The Wilkinsburg taxing bodies may, if they choose, obtain appraisals during the discovery period. Discovery will close on February 26, 2010. A status conference will be held on **March 3, 2010,** at **2:00 p.m.,** Courtroom A, 54th Floor, 600 Grant Street, Pittsburgh, Pennsylvania, to determine whether trial is needed regarding valuation.

It is **FURTHER ORDERED** that counsel for the Wilkinsburg taxing authorities may appear telephonically and shall contact the Courtroom Deputy at least 48 hours before the hearing if counsel is appearing telephonically.